# 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

ATLANTIC COAST LINE RAILROAD CO. V. BRYAN.

June 10, 1909.

1. CARRIERS—*Loss of Goods—Presentation of Claim—Time Limit.*— The provision of a bill of lading that claims for loss or damage must be made in writing to the agent of the carrier at the point of delivery promptly after arrival, and fixing a limitation of thirty days after delivery, or after due time for delivery, within which such claim shall be presented, is a reasonable one, and, unless waived, is enforceable by the carrier in bar of any action by the shipper for such loss or damage.

2. WAIVER—*Contract—Estoppel.*—A waiver, to operate as such, must arise either by contract, or by estoppel. If by contract, it must be supported like any other contract, by a valuable consideration. If estoppel by conduct is relied on, the party sought to be estopped must have caused the other party to occupy a more disadvantageous position than he would have occupied but for that conduct.

3. CARRIERS—*Lost Goods—Failure to Present Claim in Time—Vested Right of Defense—Subsequent Attempt to Find Goods—Waiver— Case at Bar.*—An attempt by a carrier to find a lost shipment after its exemption from liability has attached and become a vested right by reason of the failure of the shipper to present a claim therefor within the time and at the place stipulated for in the bill of lading, does not constitute a waiver of its right to claim such exemption, if the goods should not be located. A waiver, to be available, must be made with full knowledge of the rights intended to be waived, and the intention to waive them must be made to appear plainly. In the case at bar it is held that a letter from the carrier's agent, after exemption from liability had attached, requesting "the affidavit of the packer of the case, also invoice showing the original cost of the articles," and stating that promptly upon the receipt of these documents the matter will receive attention, did not constitute a waiver of the carrier's exemption from liability, nor estop it from relying on its exemption as a defense.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*D. Tucker Brooke* and *W. B. McIlwaine,* for the plaintiff in error.

*Thos. H. Willcox,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by J. A. L. Bryan to recover of the defendant company damages for the loss of a box of clothing shipped by him from Norfolk, Va., to one George Washington, at Dudley, N. C., a station on the line of the defendant company. The whole matter of law and fact was submitted to the court, and judgment given in favor of the plaintiff for $463.32, the amount alleged in the declaration as the value of the articles lost.

The record shows that George Washington, a negro farmer of moderate means, residing about one mile from Dudley, N. C., had his house destroyed by fire in. March, 1907; that he wrote to the plaintiff, a negro tailor and clothes presser at Norfolk, who had married his niece, informing him of the fire; that on May 11, 1907, the plaintiff shipped the box of clothes, weighing 200 pounds, to George Washington, as consignee, and that the same was lost, how or when is not explained. The only evidence of the contents of this lost box is that of the plaintiff, who says that it contained thirteen coats and vests, and eight pairs of pants, in addition to five complete suits of clothes, five pairs of shoes, four overcoats, five hats, eight undershirts, two lady's skirts, a silk shirt waist, a lady's hat, and a

box of cigars valued at $7.00; the whole aggregating in value $463.32, the amount sued for. The testimony is that these goods were all new; the clothes being made in the plaintiff's shop. The plaintiff, further testifying, estimates the entire value of his stock at the time of this voluntary gift to his wife's uncle at $1,800 or $1,900, so that he was giving away about one-fourth of his entire stock, without, according to his own testimony, being familiar with the necessities of the family he was attempting to help, and without knowing accurately the number or ages of the persons who were to be the beneficiaries of his generosity.

The first assignment of error is that the court erred in holding that the defendant company waived its right to rely on the provision in its bill of lading relieving it from liability, unless claim for loss was made in writing, at the point of delivery, within thirty days after due time of delivery.

The bill of lading which was given for the shipment in question contained the following provision: "Claims for loss or damage must be made in writing to the agent at the point of delivery promptly after the arrival of the property, and if delayed more than thirty days after the delivery of the property, or after due time for delivery thereof, no common carrier hereunder shall be liable in any event."

This condition has been held by this court to be a reasonable one, and enforceable by the carrier in bar of any suit brought by the shipper for the loss of goods for which claim was not presented as provided in the bill of lading containing such provision. *Liquid Carbonic Co.* v. *N. & W. Ry. Co.,* 107 Va. 323, 58 S. E. 569, 13 L. R. A. (N. S.) 753.

A waiver, to operate as such, must arise in one of two ways: either by contract, or by estoppel. If by contract, it must be supported by a valuable consideration; that is, such consideration as will support any other contract. 28 Am. & Eng. Enc. of L. (1st ed.), 531, and notes.

There can be no contention in the present case that there was any agreement on the part of the defendant company, founded

on valuable consideration, to waive the right now relied on. We shall, therefore, confine our attention to a consideration of the contention that the defendant company has waived its right to rely upon the stipulation contained in its bill of lading by reason of the conduct of its agents.

In order for there to be an estoppel by conduct, the party sought to be estopped must have caused the other party to occupy a more disadvantageous position than that which he would have occupied except for that conduct.

As this court has said: "Conduct will not operate as an estoppel as against one who has not been induced thereby to alter his position to his prejudice." *Terry* v. *McClung,* 104 Va. 599, 52 S. E. 355; *Rorer Iron Co.* v. *Trout,* 83 Va. 410, 2 S. E. 713, 5 Am. St. Rep. 285.

The record shows that the shipment was made on May 11, 1907, and that the bill of lading was sent to the consignee. The shipment failing to arrive within reasonable time at the point of delivery, the consignee made inquiry and requested the agent of the defendant to trace the box, stating that he supposed its value to be $30.00. This is all that was done at the point of delivery, where the claim for loss was required to be asserted in writing. The consignee does not pretend that he was setting up a claim for damages, but that he was merely inquiring as to the whereabouts of the box and asking that it be traced. Then the consignee sent the bill of lading to the shipper at Norfolk and nothing else was done except what took place there.

The record furnishes no sufficient proof of anything being done in Norfolk, except inquiry on the part of the plaintiff, as to the lost box, up to August 8, when a tracer was sent out to try and find the lost consignment. This was nearly three months after the shipment was made, and up to that time no claim had been filed with the company and no demand of any sort made for payment by the company. It cannot be held that this action of the company in attempting to find the lost shipment after its exemption from liability had attached under the stipulation

of its bill of lading, was a waiver of its right to claim such exemption, if the goods should not be located.   On the 8th of August, when the tracer was started, the exemption of the company from liability had become a vested right, and it was not necessary to the preservation of that right that the company should withhold its aid in the effort to find and restore the lost goods.   On the contrary, it was right and proper, under the circumstances, that it should do all in its power to save the consignor harmless, and in doing so its action should not be regarded as implying an intention to waive its then vested right to the exemption.

About three weeks after this tracer was started, the plaintiff made his first claim in writing for loss of the goods in the following letter, to the agent of the defendant company, dated August 28, 1907: "Dear Sir: I beg leave to enclose herewith claim amounting to $463.32, covering one box of clothing consigned to Mr. Geo. Washington, Dudley, North Carolina, on May 11, 1907.   I have called on your people on several occasions to have the same traced, but without success.   As this matter has been standing such a long time I will greatly appreciate an early settlement."

This letter indicates upon its face that it was the first time a claim was made.   The writer says: "I herewith enclose claim * * * I have called on your people on several occasions to have the same traced, but without success," etc.

To this letter the defendant's agent at Norfolk replied on the 5th of September, 1907, as follows: "Dear Sir: Referring to your letter of the 28th ulto., enclosing claim of $463.32 for one box of clothing shipped May 11 to Geo. Washington, Dudley, N. C.   In order to facilitate settlement of claim, I will thank you to let me have affidavit of packer of the case, also invoice showing the original cost of the articles.   Promptly upon the receipt of these documents the matter will receive attention."

It is contended that this letter from the defendant's agent at

Norfolk operates as an estoppel and constitutes a waiver of the defendant's right to rely upon its exemption.

When this letter was written, the time had long passed within which the plaintiff should have made his claim in writing for the loss of the goods, and the defendant's exemption from liability had long since attached and become a vested right. Nothing, therefore, that was said in this letter could have operated as an inducement to the plaintiff to put himself in any disadvantageous position. His position had long before become fixed with all of its attendant disadvantages. The letter could not, therefore, estop the defendant from relying on its exemption as a defense.

There is nothing in this letter that can be construed as a contract to waive the exemption, nor does it imply an intention on the part of the defendant to waive such exemption. At most, it does not do more than imply a possible willingness to treat with the plaintiff after receiving and examining the papers asked for; but this did not operate in any way to place the consignor in any worse position than he then occupied. In no view can this letter be regarded as a waiver by the defendant of its right to the exemption stipulated for in the bill of lading.

No one can be bound by a waiver of his rights, unless it be distinctly made with full knowledge of the rights he intends to waive, and the fact that he intends to waive them must be made to plainly appear. *Wright* v. *Agelasto,* 104 Va. 161, 51 S. E. 191.

It will be observed that the clause of the bill of lading relied on provides that the claim must be made at the place of delivery, which in this case was Dudley, N. C. Was the assertion of the claim at Norfolk, Va., the point from which the goods were. shipped, a compliance with that provision? We have dealt with the case without considering that question, or intending to express an opinion upon it.

Having reached the conclusion that the defendant is not estopped to rely upon its right to the exemption from liability

provided for in the bill of lading, it is unnecessary to consider the remaining assignment of error, that the damages awarded were excessive.

The judgment complained of must be reversed, and this court will enter such judgment as the lower court ought to have entered in favor of the defendant company.

*Reversed.*